**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Best Western International, Inc., an Arizona non-profit corporation,<br><br>  Plaintiff/Counterdefendant,<br><br>vs.<br><br>Sharda, LLC, a Utah limited liability company; and Muljibhai M. Chaudhari,<br><br>  Defendants/Counterclaimants. | No. CV-08-1219-PHX-DGC<br><br>**ORDER AND PRELIMINARY INJUNCTION** |

On August 14, 2008, the Court held a hearing on Plaintiff's motion for default judgment (Dkt. #17), Plaintiff's motion for a preliminary injunction (Dkt. #2), and Defendant's cross-motion for a preliminary injunction (Dkt. #24). Evidence and argument were presented. For reasons stated on the record at the hearing, the Court denied Plaintiff's motion for default judgment. The Court will grant Plaintiff's motion for a preliminary injunction and deny Defendant's cross-motion.[1]

**I.     Plaintiff's Motion for a Preliminary Injunction.**

   **A.     The Evidence.**

       1.     The following facts and conclusions were not disputed by Defendants:

           a.     Plaintiff owns and has registered the Best Western marks at issue in this case. Plaintiff licenses these marks to persons or entities who enter into membership

---

[1] The parties agreed at the hearing that Plaintiff's request for a temporary restraining order was unnecessary.

agreements with Plaintiff.

   b. Plaintiff's membership agreement provides that licensees must stop using the Best Western marks when their membership agreements are terminated.

   c. Plaintiff's Rules and Regulations provide that members will be subjected to twice-annual inspections of their properties. These inspections begin with a total of 1,000 points; deductions are then made for specific deficiencies found at the properties. The minimum acceptable inspection score is 800. Properties receiving a score below 800 are placed on probation. Plaintiff's Board of Directors may cancel the membership agreement with respect to any property that receives two consecutive scores below 800 or a single inspection score below 600.

   d. Before cancelling a membership agreement, the Rules and Regulations require that Plaintiff grant a hearing before its Board of Directors.

   e. The parties entered into a membership agreement with respect to Defendants' Best Western Motor Inn hotel located in Delta, Utah.

   f. Defendants' hotel was inspected by Plaintiff on February 20, 2008. The inspection score was 273. On the basis of this score, the Board of Directors scheduled a hearing concerning Defendants' membership. The hearing was held on March 1, 2008. Defendant Chaudhari appeared and attempted to persuade the Board not to cancel his membership. On the basis of the 273 score, the Board formally terminated Defendants' membership agreement.

   g. Defendants have continued to use the Best Western marks despite the termination of their membership agreement.

  2. At the preliminary injunction hearing on August 14, 2008, Defendants argued that the March 1, 2008 hearing before Plaintiff's Board of Directors was not fair. Defendants asserted that the low score from the February 2008 inspection was due to unusually cold weather that delayed property improvement projects, as well as the unexpected resignation of six housekeeping employees. Defendants argued that Plaintiff should not, on the basis of such unavoidable circumstances, terminate the membership of a

- 2 -

1 property that has enjoyed membership for twenty years. Termination in these circumstances, 2 Defendants argued, violated the covenant of good faith and fair dealing implied in the 3 membership agreement and the other governing documents of Plaintiff's organization, 4 including the Member Bill of Rights.

5 Defendant Chaudhari testified at the preliminary injunction hearing concerning the 6 cold weather and unexpected resignations that preceded the low inspection score. He 7 testified about his plans to improve the property, and improvements that have already been 8 made. He testified briefly about the March 1, 2008 Board hearing, noting that he explained 9 these same matters to the Board and that one Board member suggested he should invest one 10 million dollars in the property during the next six months. Defendants presented no other 11 evidence concerning the Board hearing, Plaintiff's deliberations, or the reasons for Plaintiff's 12 decision.

13 **B.    Plaintiff's Entitlement to Injunctive Relief.**

14 1.    Plaintiff seeks preliminary injunctive relief with respect to its trademark 15 infringement claim under the Lanham Act, 15 U.S.C. § 1114. Dkt. #2; *see* Dkt. #1 ¶¶ 52-58 16 (Count IV).

17 2.    The traditional equitable criteria for granting preliminary injunctive 18 relief are "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable 19 injury to the plaintiff if the preliminary relief is not granted, (3) a balance of hardships 20 favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." *L.A.* 21 *Mem'l Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1200 (9th Cir. 1980). "In this circuit, the 22 moving party may meet its burden by demonstrating either (1) a combination of probable 23 success on the merits and the possibility of irreparable injury or (2) that serious questions are 24 raised and the balance of hardships tips sharply in its favor." *Id.* at 1201.

25 3.    "In a trademark infringement claim, 'irreparable injury may be 26 presumed from a showing of likelihood of success on the merits.'" *GoTo.com, Inc. v. Walt* 27 *Disney Co.*, 202 F.3d 1199, 1204 n. 4 (9th Cir. 2000) (quoting *Brookfield Communications,* 28 *Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1066 (9th Cir.1999)). "This presumption

1 2 effectively conflates the dual inquiries of this prong into the single question of whether the plaintiff has shown a likelihood of success on the merits." *Id.*

3 4 5 6 7 8 9 10 11 12 13 14         4.        Section 1114 of the Lanham Act provides that any person who, without consent of the trademark registrant, uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services," in a manner "likely to cause confusion" with the registrant's goods and services, "shall be liable in a civil action[.]" 15 U.S.C. § 1114(1). Defendants do not dispute that Plaintiff is the owner and registrant of the Best Western marks, that the marks are both valid and strong, that Defendants are continuing to use the marks in commerce, or that their use of the marks is likely to cause confusion – to suggest to the public that Defendants' hotel is affiliated with Best Western.[2] Defendants instead contend that their use of the marks is not unauthorized – that Plaintiff's improper termination of the membership agreement has not effectively rescinded the license contained in the agreement.

15 16 17 18 19 20 21 22         5.        The Court concludes that Plaintiff has demonstrated a strong probability of success on the merits of its Lanham Act claim for trademark infringement. With respect to Defendants' sole defense – that termination of Defendants' membership agreement was improper – Plaintiff has established that Defendants' membership was terminated on the basis of the low inspection results, that Plaintiff had the express right under the Rules and Regulations to terminate a membership agreement on this basis, that termination of the membership agreement also terminated Defendants' rights to use the Best Western marks, and that Defendants' continued use of the marks is therefore unauthorized.

23 24 25         6.        Defendants assert that they provided good reasons for the poor inspection score and that termination of the membership agreement therefore violated the covenant of good faith and fair dealing. Defendants do not dispute, however, that they

---

[2] Because of these concessions, the Court need not address the likelihood of confusion under the Ninth Circuit's *Sleekcraft* test. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).

- 4 -

1  received an exceptionally low score as a result of the February 2008 inspection: 273 points
2  out of a possible 1,000 points, with 800 being the acceptable minimum. Nor do they dispute
3  that Plaintiff's Rules and Regulations grant Plaintiff the right to terminate the membership
4  agreement for any property receiving a single score below 600 points, or that Plaintiff
5  granted them a hearing as required by the Rules and Regulations before terminating the
6  membership agreement. Defendants complain about the result of the hearing, but they have
7  provided no evidence from which the Court can conclude that Plaintiff violated the covenant
8  of good faith and fair dealing or the Member Bill of Rights. Plaintiff exercised a right clearly
9  granted in its Rules and Regulations and did so after an undisputed low inspection score and
10 a hearing as required by the rules. The fact that Defendants strongly disagree with Plaintiff's
11 decision does not constitute evidence that Plaintiff acted in bad faith, and Defendants have
12 presented no other evidence of bad faith.[3] Because the Court finds that Defendants have
13 presented no persuasive evidence to support their claim that Plaintiff acted in bad faith, and
14 Defendants have presented no other defense to Plaintiff's Lanham Act claim for trademark
15 infringement, the Court concludes that Plaintiff has established a strong likelihood of success
16 on the merits of that claim.

17        7.    Because Plaintiff has shown a likelihood of success on its trademark
18 claim, the Court presumes irreparable injury. *See GoTo.com, Inc.*, 202 F.3d at 1204 n. 4.

19        8.    Because Plaintiff has established a likelihood of success on the merits
20 and the possibility of irreparable injury, it is entitled to a preliminary inunction. *See L.A.*
21 *Mem'l Coliseum*, 634 F.2d at 1200.

22 **II.   Defendants' Cross-Motion for a Preliminary Injunction.**

23        Defendant's cross-motion alleges that Plaintiff fraudulently induced Defendants to
24 purchase the hotel in Delta, Utah, fraudulently forced Defendants to expend large sums of
25 money on the hotel, failed to provide promised assistance and guidance, fraudulently and in
26 bad faith arrived at the score of 273 during the February 2008 inspection, wrongfully

---

[3]The Court cannot conclude that the comment of one Board member on the need to invest one million dollars in improving the property constitutes bad faith by Plaintiff.

- 5 -

1  required Defendants to remodel the exterior of the hotel, and wrongfully terminated the
2  membership agreement. Dkt. #24. Other than the testimony at the preliminary injunction
3  hearing concerning wrongful termination of the agreement, Defendants have presented no
4  evidence to support this motion. No affidavits or other evidence were attached to the motion.
5  Dkt. #24.

6  For reasons discussed above, the Court finds that Defendants have failed to present
7  any substantial evidence in support of their wrongful termination claim. Because Defendants
8  have presented no other evidence to support their motion, the Court finds that they have
9  failed to establish a probability of success on the merits. The Court therefore will deny
10 Defendants' request for a preliminary injunction.

11 **III.   Bond Amount.**

12 Rule 65 of the Federal Rules of Civil Procedure provides that "[t]he court may issue
13 a preliminary injunction . . . only if the movant gives security in an amount that the court
14 considers proper to pay the costs and damages sustained by any party found to have been
15 wrongfully enjoined[.]" Fed. R. Civ. P. 65(c). On the Court's request, the parties submitted
16 supplemental briefing on this issue. Dkt. ##32, 33.

17 Plaintiff argues that the Court has discretion in setting the amount of the bond, that
18 the likelihood of Plaintiff's success on the merits mitigates the chances of any injury being
19 incurred because of a wrongful injunction, and that Defendants have presented no evidence
20 to support a substantial bond. Plaintiff suggests a bond amount no greater than $25,000.
21 Dkt. #32.

22 Defendants ask the Court to require security in the amount of $400,000. Dkt. #33.
23 A portion of this amount, however, consists of an alleged 30% drop in Defendants' business
24 due to the termination of Defendants' participation in the Best Western computerized
25 reservation system. *Id.* at 3. Because that termination occurred earlier this year and is not
26 part of the preliminary injunction, any injury resulting from the termination is not properly
27 considered under Rule 65(c). *See* 11A Charles Alan Wright, Arthur R. Miller & Mary Kay
28 Kane, *Federal Practice and Procedure* § 2954 ("The security will not include any damages

- 6 -

1  . . . for claims against a party who instituted the action other than those directly attributable
2  to the improvidently issued injunction.").

3  Defendants further assert that they will lose $200,000 in profits from lost business due
4  to the injunction and incur another $185,000 to $200,000 in costs to rebrand the hotel, but
5  Defendants have presented no evidence to support these claims. Dkt. #33 at 3. Defendant
6  Chaudhari testified at the hearing that the loss of the Best Western marks would hurt his
7  business because 55% to 60% of this business is repeat customers, but he failed to attach any
8  value to that injury. He testified that switching to another brand of hotel would reduce his
9  average daily revenues, but he failed to attach any dollar amount to that reduction. Nor did
10 he testify about rebranding costs.

11 The Court nonetheless must set a bond amount under Rule 65(c). Given the nature
12 of this business and Plaintiff's likelihood of success on the merits, the Court concludes that
13 security in the amount of $75,000 will reasonably protect Defendants against injury if this
14 injunction is entered incorrectly.

15 **IT IS ORDERED:**

16 1.  Plaintiff's motion for preliminary injunction (Dkt. #2) is **granted**.

17 2.  Defendants Sharda, LLC and Muljibhai M. Chaudhari, and their officers,
18 agents, servants, employees, attorneys, and other persons who are in active concert or
19 participation with them, are enjoined and restrained from using, displaying, or advertising
20 any trademarks or service marks owned by Best Western, including any colorable imitation
21 of Best Western trademarks or service marks, any Best Western sign, or any other mark that
22 is confusingly similar to Best Western trademarks or service marks, in connection with
23 Defendants' hotel located in Delta, Utah. This preliminary injunction includes, but is not
24 limited to, road signs, door signs, building signs, business cards, telephones, ice buckets,
25 ballpoint pens, notepads, trash cans, drinking cups or glasses, stationary or envelopes, non-
26 smoking signs, toiletries, do not disturb signs, laundry bags, domain names, metatags,
27 Internet key words or banner ads, and any other item used or connected to Internet search
28 engines. Defendants Sharda, LLC and Chaudhari, as well as their officers, agents, servants,

1  employees, attorneys, and any other persons who are in active concert or participation with
2  them, are further enjoined and restrained from engaging in any other acts likely to cause
3  others to believe that Defendants' hotel in Delta, Utah, is connected to, associated with, or
4  sponsored by Best Western.

5      3.    This preliminary injunction shall become effective upon Plaintiff's posting of
6  a bond in the amount of $75,000.

7      4.    This preliminary injunction shall remain in effect until the conclusion of this
8  litigation or further order from this Court.

9      5.    Defendants' cross-motion for a preliminary injunction (Dkt. #24) is **denied**.

10     6.    The Court will schedule a Rule 16 Case Management Conference by separate
11 order.

12 DATED this 20th day of August, 2008.

_David G. Campbell_
David G. Campbell
United States District Judge

- 8 -